William Artus
101 W. 13th Avenue, Unit 101
Anchorage, Alaska 99501
Telephone: (907) 529-9778
Email: artuslaw@ak.net

Attorney for Plaintiff

# IN THE UNITED STATES COURT
# FOR THE DISTRICT OF ALASKA

LISA M. WILLIAMS,

    Plaintiff,

v.

UNITED STATES DEPARTMENT OF THE INTERIOR, INTERIOR BOARD OF INDIAN APPEALS,

    Defendant..

Case No. 3:25-cv-_____

## COMPLAINT FOR JUDICIAL REVIEW OF FEDERAL AGENCY DECISION

Plaintiff Lisa M. Williams, by and through her attorney, William Artus, appeals from a final decision of the United States Department of the Interior, Interior Board of Indian Appeals, that was entered on May 8, 2025, and complains and states as follows:

### JURISDICTION

1. Plaintiff Lias M. Williams (Lisa) is a resident of Anchorage, Alaska.

2. The defendant is a federal agency that, among other things, has jurisdiction over the probate of the estate of an Alaska native in which property of the estate includes restricted land in Alaska.

3. This court has jurisdiction to hear and decide this appeal under the Administrative Procedure Act, 5 U.S.C. Sec. 706(2)(A) and (D) and 28 U.S.C. § 1331.

## BACKGROUND

4. Plaintiff is the surviving spouse of Earl Advin Williams (Earl). Earl is an Alaska native who died in Naknek, Alaska on February 19, 2014. At the time of his death Earl owned restricted land in Alaska that became part of his probate estate. Because Earl owned restricted Alaska native land at the time of his death the United States Department of the Interior, Bureau of Indian Affairs, accepted a probate case to administer the restricted Alaska native land.

5. In April 2013 Earl prepared a lengthy handwritten will that named Lisa as his sole beneficiary. The will was signed and witnessed on April 30, 2013. The will specifically excluded his children, Jessie Williams and Cody Williams, from inheriting or receiving any of his real property or personal property.

6. After Earl died Jessie Williams and Cody Williams, his two children, submitted a copy of a handwritten will that was purportedly signed by Earl on February 17, 2014, two days before his death (the second will), to the Bureau Of Indian Affairs and requested the Bureau to accept the second will as a valid and enforceable will. The original second will does not exist.

7. The Bureau of Indian Affairs held an initial probate hearing on the validity of the second will on December 5, 2016. Lisa did not receive notice of the hearing and she did not attend the hearing. After the hearing a decision was entered that held that the second will was properly executed and that Earl's restricted Alaska native land should be distributed to his children.

8. Lisa disputed the validity of the second will in several administrative proceedings, including an appeal to the Interior Board of Indian Appeals. On May 8, 2025 the Interior Board of Indian Appeals issued an Order Affirming Denial of Reopening that, among other things, upheld the validity of the second will. A copy of the Order is attached as Exhibit 1.

## RELIEF REQUESTED

9. Lisa believes and asserts that the second will is not valid or enforceable, and that the Order entered by the Interior Board of Indian Appeals should be reversed and set aside for the following reasons:

a. The decision is arbitrary, capricious, an abuse of discretion and not in accordance with the law;

b. The second will does not comply with the requirements of 25 C.F.R. § 15.4;

c. The decision is not warranted or justified by the applicable facts and law.

WHEREFORE, plaintiff requests the following relief:

1. A judgment and determination that the second will purportedly signed by Earl Advin Williams on February 17, 2014 is not valid or enforceable;

2. A judgment and determination that the second will purportedly signed by Earl Advin Williams on February 17, 2014 does comply with the requirements of 25 C.F.R. § 15.4;

3. A judgment and determination that the will that was signed by Earl Advin Williams and witnessed on April 30, 2013 is his valid will and that his restricted Alaska native land must be distributed to plaintiff in accordance with the provisions of that will

4. For such additional relief that the court deems appropriate.

Dated at Anchorage, Alaska on May 27, 2025.

*William Artus*
William Artus
ABA No. 7410059

I



**United States Department of the Interior**

OFFICE OF HEARINGS AND APPEALS
INTERIOR BOARD OF INDIAN APPEALS
801 NORTH QUINCY STREET
SUITE 300
ARLINGTON, VA 22203

| | |
|---|---|
| ESTATE OF EARL ADVIN WILLIAMS ) | Order Affirming Denial of Reopening |
| ) | |
| ) | Docket No. IBIA 18-047 |
| ) | |
| ) | May 8, 2025 |

    Lisa M. Williams (Lisa or Appellant) appealed to the Board of Indian Appeals (Board) from an April 13, 2018, Order Denying Rehearing and Decision on Reopening (Order Denying Reopening) by Administrative Law Judge (ALJ) Earl J. Waits in the estate of Appellant's husband, Earl Advin Williams (Decedent).[1] The Order Denying Reopening was issued after a supplemental hearing and found that Lisa failed to show error in ALJ James Yellowtail's original probate decision dated February 23, 2017 (Decision). The Decision found that Decedent's original February 17, 2014, will had been lost but existed at the time Decedent died, accepted and approved a copy of the will, and ordered that Decedent's trust estate be distributed according to its terms. The approved will devised Decedent's entire trust estate to his two children, Jessie Elizabeth Williams (Jessie) and Cody Francis Williams (Cody), and made no provision for Lisa.

    On appeal, Appellant challenges the approval of Decedent's will on several grounds. Appellant argues, among other things, that because the location of the original will remains unknown, a presumption applies that the testator revoked the will by destroying it. Because we find that Appellant's arguments either fail to carry Appellant's burden to demonstrate error in the Order Denying Reopening or are outside the scope of review on appeal, we affirm.

## Background

    Decedent died testate in Naknek, Alaska, on February 19, 2014, possessed of restricted property located in Alaska. Decision at 1 (Administrative Record (AR) 2)[2];

---

[1] Decedent was an Alaska Native. His probate case is assigned Probate No. T000125709 (formerly No. P000125709IP).

[2] The administrative record the Board received from the Land Titles and Records Office (LTRO), Alaska Region, Bureau of Indian Affairs (BIA) (comprising 3 volumes organized
(continued...)

EXHIBIT 1
Page 1 of 11

Certificate of Death, Aug. 27, 2014 (AR 5); *see* Inventory of Decedents Reports, Apr. 5, 2016 (AR 4). Decedent was survived by his wife, Lisa, and his two children from a previous relationship, Jessie and Cody. Data for Heirship Finding and Family History, Apr. 8, 2016, at 1 (AR 3). A handwritten will was offered at probate that Decedent executed on February 17, 2014, two days before he died. Will of Decedent, Feb. 17, 2014 (Will) (AR 6). The Will was signed by a witness, Peggy Saia (Saia), and a notary, Donna Joann Vukich (Vukich). Decision at 1; *see* Will at 1. The approved Will devises all Decedent's "worldly possessions" including "land" to Jessie and Cody, in equal shares, and omits Lisa entirely. *Id.* An earlier will that Decedent executed in 2013 expressly disinherited Jessie and Cody and devised his entire estate to Lisa. *See* Last Will and Testament of Earl Advin Williams, Apr. 30, 2013, at 2, 6-7 (2013 Will) (AR 6). The approved Will, however, states that it "super[s]edes all existing wills." Will at 1.

ALJ Yellowtail held the initial probate hearing on December 5, 2016, in Warm Springs, Oregon. Decision at 1; Probate Hearing Transcript (Tr.), Dec. 5, 2016 (AR 2). Jessie and Cody attended; Lisa did not.[3] *See id.* at 2; *see also* Order Denying Reopening at 2. At the probate hearing, the ALJ's paralegal testified that his search for the original Will within the Alaska state court system was unsuccessful. Probate Hearing Tr. at 8. Jessie testified that she was present when Decedent executed the Will on February 17, 2014, and she placed the original in an envelope that her cousin took to the post office on February 18, 2014, to mail to the Alaska Superior Court (Court) for safekeeping. *Id.* at 9-11. In support of her testimony, Jessie produced a customer copy of the outgoing mailing

---

(…continued)
in 25 tabs) omitted the transcripts from the probate hearing and the supplemental hearing. The Board subsequently obtained the transcripts from the Probate Hearings Division (PHD) of the Office of Hearings and Appeals (OHA), added them to the record, and ordered LTRO to submit to the Board an amended table of contents for the record. *See* Notice of Supplementation of Administrative Record and Order for LTRO to Submit Amended Table of Contents and Certification, Sept. 5, 2018, at 1-2. Given the manner that LTRO added the transcripts and other documents to the record and the table of contents without reorganizing the tabs, the amended table of contents does not fully correspond with where documents are found in the record. Therefore, except for the hearing transcripts identified in the amended table of contents as under AR 1 and AR 2, the Board will cite to the record as reflected in the original table of contents.

[3] Notice of the hearing was posted at the BIA Warm Springs Agency in Warm Springs, Oregon. Notice of Initial Hearing, Nov. 2, 2016, at 1 (AR 11). PHD also served personal notice on Appellant at an address in Alaska, *id.* at 2; however, the notice was returned to PHD, Order Denying Reopening at 2.

EXHIBIT 1
Page 2 of 11
Case 3:25-cv-00103-HRH   Document 3   Filed 05/29/25   Page 5 of 14

label addressed to the Court in Anchorage, Alaska, dated February 18, 2014, with Decedent's return address on the receipt. *Id.* at 9; U.S. Postal Service (USPS) Mailing Receipt, Feb. 18, 2014 (Mailing Receipt) (AR 18). Jessie also produced a certified mail return receipt "green card," dated February 20, 2014, signed by Court employee Phillip Erickson (Erickson). Probate Hearing Tr. at 10; USPS Return Receipt, Feb. 20, 2014 (Green Card) (AR 18).

Based on Jessie's testimony and evidence, ALJ Yellowtail found that the original Will had been lost and that the document offered at probate was an accurate copy of the original Will. Decision at 1-2. The ALJ further found that the Will was extant when Decedent died on February 19, 2014, because there was "no reasonable possibility that [Decedent] had access to the [W]ill or had any opportunity to destroy and revoke" it before he died. *Id.* at 2. Thus, ALJ Yellowtail concluded that there was no basis to apply a legal presumption that the absence of the original Will means that Decedent had revoked it by destruction. *Id.* (citing *Estate of Dennis Calf Looking*, 52 IBIA 1 (2010)).

Concerning the validity of the Will, Jessie and Cody each testified that the signature on the Will was Decedent's. Probate Hearing Tr. at 13-14. In addition, the Will witness and the notary submitted affidavits, each attesting that Decedent signed the Will in her presence, was of sound mind, and had not acted under duress. *Id.* at 14; *see* Affidavit (Aff.) of Peggy Saia, Nov. 8, 2016 (AR 7), Aff. of Donna Joann Vukich, Nov. 4, 2016 (AR 8). Based on that evidence, ALJ Yellowtail concluded that the Will was properly executed and that, at the time of execution, Decedent possessed testamentary capacity and acted free of undue influence. Decision at 1. Pursuant to the terms of the Will, ALJ Yellowtail ordered that Decedent's restricted property be distributed to Jessie and Cody, in equal shares. *Id.* at 2. Notice of the Decision was mailed on February 23, 2017, and stated that the Decision would become final in 30 days unless a written petition for rehearing was filed within that time. Notice of Decision, Feb. 23, 2017, at 1 (AR 2). Lisa's copy of the notice was sent in care of BIA in Anchorage, instead of to her home address of record. *See id.* at 2.

Lisa filed a petition[4] that alleged, among other things, that the signature on the Will was not Decedent's, that Decedent's cause of death and date of death had been falsified, and

---

[4] Lisa's petition was handwritten on a series of Court motion and affidavit forms dated April 9, 2017, which she faxed to OHA in Albuquerque, New Mexico, on April 12, 2017. *See* Fax Cover Sheet with Attachments, Apr. 12, 2017 (Petition for Reopening) (AR 21); Email from OHA to BIA Alaska Regional Office, Apr. 26, 2017 (AR 21); Order Denying Reopening at 3. Because Lisa filed the documents more than 30 days after the Decision was mailed, ALJ Waits found it untimely as a petition for rehearing. *Id.* However, because

(continued...)

EXHIBIT 1
Case 3:25-cv-00103-HRH   Document 3   Filed 05/29/25   Page 6 of 14   Page 3 of 11

that criminal allegations against Vukich undermined her credibility as a witness. *See, generally*, Petition for Reopening. At the subsequent hearing, Jessie and two Court employees testified regarding the chain of custody of the original Will. Bertie Jones (Jones), the Assistant Supervisor of the Court's Probate Department, testified that she was uncertain whether her department had received the original Will, but that, if it had been submitted without the required "Agreement in Receipt for Deposit of Will" form, the Court would have returned the original document to the sender without retaining a copy. Supplemental (Supp.) Hearing Tr., Feb. 23, 2018, at 6-8, 10-11 (AR 2). Erickson, whose job duties included retrieving the Court's mail from the post office, acknowledged his signature on the Green Card. *See id.* at 14. He also testified that he would not have opened any mail that he was tasked to deliver to the Court. *Id.* at 15. Jessie again testified that she gave the envelope containing the original Will to her cousin for mailing. *Id.* at 61-63. Jessie also testified that she had not included the required form agreement that Jones described; but that the original Will had not been returned to her post office box; therefore, Jessie "assumed" the original Will must have gone to Decedent's post office box in Naknek. *Id.*

Concerning the validity of the Will, Lisa's handwriting expert witness, Linton A. Mohammed, Ph.D., testified that he had compared the signature on the Will to dozens of documents known to have been signed by Decedent, including three other documents Decedent reportedly signed on the same day as the Will, and opined that Decedent "probably did not write that signature" on the Will.[5] Supp. Hearing Tr. at 19-20. Dr. Mohammed qualified his opinion by stating that it was limited by the fact that he only reviewed copies of documents, not originals. *See id.* at 26, 30.

Lisa testified that she and Decedent did not have marital problems, *id.* at 52, and that she did not think Decedent would have changed his 2013 Will that devised his estate to her, *id.* at 59. She also testified that she and Decedent lived in Anchorage until January 2014, when Decedent moved back to Naknek without her to live with Jessie. *Id.* at

---

(…continued)
it "appeare[d] likely that [Appellant] did not receive proper notice of the initial hearing or of the [D]ecision," ALJ Waits construed Lisa's filing as a timely petition for reopening. *Id.* at 2, 3.

[5] Dr. Mohammed testified that "probable" is the "third level up" in degree of certainty on the forensic experts' evaluation scale, i.e., less conclusive than "literally certain" and "highly probable." Supp. Hearing Tr. at 30; *see also* Document Examination Report, Feb. 7, 2018, at 5-6 (Expert Report) (AR 14); Expert Report, Appendix 4 – Standard Terminology for Expressing Conclusions of Forensic Document Examiners, undated (AR 16).

EXHIBIT 1
Page 4 of 11
Case 3:25-cv-00103-HRH   Document 3   Filed 05/29/25   Page 7 of 14

41, 50-51. Jessie testified that her father decided to change his will in the final days of his life and that she and her aunt arranged for the witnesses to come to the house for that purpose. *Id.* at 60. Lisa's counsel sought to admit evidence of misconduct allegations a former employer raised against Vukich, though ALJ Waits questioned its relevance. *Id.* at 56-57. And in his closing remarks, Lisa's counsel stated that Decedent had been prescribed pain management medication and questioned whether, due to the medication, Decedent was "even capable" or had the "necessary testamentary [capacity]" to validly execute the Will. *Id.* at 69-71.

On April 13, 2018, ALJ Waits issued the Order Denying Reopening, concluding that Appellant had not met her burden to demonstrate factual or legal error in the Decision. *See* Order Denying Reopening at 4. Concerning the original Will, ALJ Waits found credible and uncontradicted Jessie's testimony that the original Will was in the envelope mailed to the Court. *Id.* at 2. He also found that, based on the timeline, the Will could not have been in Decedent's possession after he signed it and before he died and, therefore, "the presumption of revocation by destruction is not applicable in this case." *Id.* at 3. Consistent with ALJ Yellowtail's finding, ALJ Waits concluded that the copy of the Will presented at probate was a true copy, accepted the copy "as the [W]ill of Decedent," and found that the Will was properly executed and was not revoked by Decedent prior to his death. *Id.* at 5. Concerning the validity of the Will, ALJ Waits found that the will witnesses' testimony in the affidavits that they observed Decedent execute the Will outweighed the testimony from the handwriting expert that the signature on the Will "probably was not" Decedent's. *Id.* at 5. While the ALJ found that Dr. Mohammed's expert opinion was entitled to "some weight," that weight was limited by the fact that Dr. Mohammed was not present when the Will was executed and that he had examined only copies of the Will and handwriting samples. *Id.* And concerning Appellant's contention that Vukich's alleged misconduct undermined her credibility as a will witness, the ALJ concluded that, while a felony conviction could be grounds for finding a witness not credible, such a finding was not mandatory and, in his view, the allegations against Vukich did not impugn her credibility as a will witness here. *Id.* at 4 n.10 (also noting that the evidence presented concerned a civil suit against Vukich, not a criminal complaint).

This appeal followed. Appellant submitted a notice of appeal with arguments and an opening brief. Jessie filed an answer brief.[6]

---

[6] After briefing on the merits concluded, Appellant submitted information on new developments in the collateral matters involving Vukich, which the Board declines to consider. *See* Notice, May 20, 2019.

## Standard of Review

The Board reviews challenges to factual determinations by the probate judge to ensure that those determinations are supported by substantial evidence. *Estate of Dorothy Glende*, 61 IBIA 183, 189 (2015). We review questions of law and the sufficiency of the evidence *de novo*. *Id.*; *Estate of Edward Teddy Heavyrunner*, 59 IBIA 338, 346 (2015). Appellant has the burden to show error in the Order Denying Reopening, and simple disagreement with or bare assertions are insufficient to carry that burden. *See id.*

Unless some manifest error or injustice exists, the Board's scope of review is limited to reviewing those issues brought before the ALJ on rehearing or reopening. 43 C.F.R. § 4.318 (Scope of review); *see Estate of Leroy Charles Dennison*, 61 IBIA 66, 68 (2015). Therefore, we generally will not consider allegations of error or evidence that could have been, but were not, presented to the probate judge. *Id.*

## Discussion

Appellant advances several challenges to the Order Denying Reopening, some of which are presented for the first time on appeal to the Board. Appellant argues that (1) ALJ Waits erred by improperly limiting the scope of review given his finding that Appellant likely did not receive proper notice of the initial probate hearing, Notice of Appeal, May 9, 2018, at 1 (unnumbered) (NOA); (2) the Will is invalid because Decedent did not date it himself, Opening Brief (Br.), Sept. 12, 2018, at 1-2; (3) the presumption of revocation of the Will by destruction should have been applied because the original Will was never recovered, *id.* at 2-6; (4) the ALJ gave insufficient weight to the handwriting expert's opinion that the signature on the Will "probably" was not Decedent's, *id.* at 7-8; (5) the ALJ erred by finding that allegations of misconduct against Vukich were irrelevant to her credibility as a will witness, *id.* at 8-9; and (6) the ALJ erred by failing to consider whether prescription pain medication impacted Decedent's testamentary capacity, *id.* at 9-10. We address each argument in turn.

*First*, Appellant argues that she did not receive notice of the original probate hearing and ALJ Waits "improperly limited the scope of [his] review of the original decision" by denying her "a *de novo* hearing on the validity of the two wills." NOA at 1-2. We have held that, "when a petition for reopening appears to have merit and the petitioner lacked notice of the original proceedings, the probate judge must provide the petitioner with an opportunity to present evidence and testimony." *Estate of Williamson Bearstail*, 64 IBIA 337, 341-42 (2017). ALJ Waits conducted a supplemental hearing and allowed the parties, including Appellant, "to present such evidence as each may desire." Notice of Supplemental

Hearing, Jan. 19, 2018, at 1 (AR 25).[7] At the supplemental hearing, Appellant called witnesses, including her handwriting expert; examined Jessie, Jones, and Erickson regarding the chain of custody of the original Will; and raised arguments concerning witness credibility and testamentary capacity. Thus, assuming that Appellant lacked notice of the initial hearing, she was afforded another opportunity to present evidence and demonstrate error regarding the findings on the validity of the Will and whether the presumption of revocation by destruction properly applied. Nothing more was required.[8]

*Second*, Appellant argues that the Will is invalid because Decedent did not date the instrument himself. Opening Br. at 1-2 (citing 25 C.F.R. § 15.4).[9] As a threshold matter, we will not consider Appellant's new argument because it was presented for the first time on appeal and, therefore, is outside the scope of the Board's review. 43 C.F.R. § 4.318; *Estate of Dennison*, 61 IBIA at 68. And if we did consider this argument, we would reject the notion that § 15.4 requires the testator to personally scribe the date on the will. Appellant cites no support for that reading and we have found none. The "formalities of execution" of a testamentary instrument are that it is "signed by the testator, dated, and witnessed by two disinterested adults." *See* 73 Fed. Reg. 67256, 67259 (Nov. 13, 2008) (referencing § 15.4). While the instrument certainly must be dated, there is no requirement that it be dated by the testator personally.

*Third*, and chiefly, Appellant argues that the ALJs erred by not presuming that Decedent had revoked the Will by destruction because the original instrument was lost and there was no other explanation for that loss except that Decedent destroyed it before it was mailed to the Court. *See* Opening Br. at 2, 6. The Board has held that, where a testator had actual possession of their original will and that will cannot be found after they die, it must be presumed that the testator destroyed the original will with the intention of revoking it, unless the record establishes that the original will is "sufficiently accounted for" to defeat that presumption. *See Estate of Calf Looking*, 52 IBIA at 1, 4. If the testator did

---

[7] Notably, the supplemental hearing originally scheduled for November 30, 2017, was rescheduled, at Appellant's request, to allow Appellant to retain the handwriting expert and to "conduct an investigation into the circumstances regarding the purported will and the witnesses to the purported will." *See* Motion to Reschedule Hearing, Nov. 8, 2017, at 1 (unnumbered) (AR 21).

[8] We also note that, even if Appellant's petition were construed as a timely petition for rehearing, the outcome in this case would be the same.

[9] For a valid will, "[y]ou must meet the requirements of § 15.3, date and execute your will, in writing and have it attested by two disinterested adult witnesses." 25 C.F.R. § 15.4 (What are the requirements for a valid will?).

not have actual possession of their original will, or if the original will is "sufficiently accounted for" and the presumption is overcome, then a copy of the will may be approved in the absence of the original (assuming the will was properly executed).[10] *See id.* at 4. We affirm the Order Denying Reopening's conclusion that the presumption of revocation by destruction does not apply here because the record supports the determination that Decedent did not have actual possession of his original Will after he executed it and before he died. *See* Decision at 1-2 (concluding that "there is no basis for application of any presumption that the [D]ecedent destroyed and thereby revoked the will" because "there is no reasonable possibility that he had access to the will or had any opportunity to destroy and revoke the will during the final two days of his life"); Order Denying Reopening at 1, 5 (summarizing and affirming the finding that presumption of revocation by destruction did not apply because Decedent did not again possess the Will after he executed it).

There is substantial support in the record for that determination. Decedent and the witnesses executed the Will on February 17, 2014. Jessie testified that on February 18, 2014, she gave the envelope containing the original Will to her cousin to mail to the Court by certified mail. Supp. Hearing Tr. at 61-63; *see also* Mailing Receipt (showing mailing date of February 18, 2014). Decedent died on February 19, 2014. Court employee Erickson testified that the Court received that certified mail envelope on February 20, 2014, as evidenced by Erickson's signature on the Green Card. Supp. Hearing Tr. at 14. Court employee Jones testified that, under the Court's policies, the submission that Jessie admitted lacked the required form agreement would have been returned to the sender without the Court retaining a copy of the enclosed instrument. *See id.* at 6-7, 10-11 (Jones discussing required form agreement), *id.* at 62 (Jessie stating that she did not include the required form in the mailing). Appellant does not dispute that an envelope was mailed to the Court on February 18, 2014; rather, she states that she does not believe the envelope contained the original Will. Opening Br. at 4. ALJ Waits concluded that Appellant's mere speculation is insufficient to rebut Jessie's testimony, and we see no reason to disturb that conclusion. *See* Order Denying Reopening at 2. Thus, there is unrefuted evidence in the record that the original Will was in the envelope mailed to the Court and Decedent did not have actual possession of it after he executed it and before his death. Consequently, the Order Denying Reopening correctly concluded that the subsequent loss of the original Will does not trigger the presumption that Decedent destroyed it with the intention of revoking it.

---

[10] As discussed, *infra*, we have no reason to disturb ALJ Waits' determination that the Will was properly executed.

Case 3:25-cv-00103-HRH   Document 3   Filed 05/29/25   Page 11 of 14

EXHIBIT 1
Page 8 of 11

Appellant goes to some length to establish an already conceded point—that the original Will is lost. *See* Opening Br. at 3-6. For example, Appellant presents, for the first time on appeal, testimony from Lisa Anderson (Anderson), a USPS postmaster for Naknek, who asserts that the return address on the Mailing Receipt is Jessie's, not Decedent's. *See* Opening Br., Exhibit 2 – Telephonic Deposition of Lisa Anderson Tr., July 19, 2018, at 9-10. Appellant therefore contends that, contrary to Jessie's testimony, Jessie would have received the returned mail from the Court, not Decedent. Opening Br. at 5. Appellant asserts that Jessie's failure to produce the original Will at probate is "compelling evidence" that Decedent destroyed it. *Id.* at 4. Appellant further contends that, had ALJ Waits known that the original Will was returned to Jessie's post office box and not to Decedent's, then he would not have found that the original Will was "sufficiently accounted for to defeat the presumption of revocation." *Id.* at 5.

Appellant raises this argument for the first time on appeal; thus, we again decline to consider it as outside our scope of review. And even if we were to consider it, we would not find that it proves that *Decedent* ever had actual possession of the original Will to presume that he destroyed it. At best, Anderson's testimony reinforces the conclusion that, even if Decedent had survived long enough to retrieve anything from his post office box, the envelope from the Court would not have been among those items retrieved because it was returned to Jessie's box, which Decedent could not have accessed without Jessie's authorization. *See* Anderson Deposition Tr. at 5-6. If, according to Appellant, the original Will was indeed returned to Jessie's post office box (and not Decedent's), then clearly Decedent could not have possessed and destroyed it. And if *Jessie* had received and subsequently destroyed the Will as Appellant seems to suggest, then destruction would not have occurred by Decedent's hands. Moreover, the location of the original Will need not be definitively known for it to be considered "adequately accounted for"; rather, it need only be accounted for to establish that the testator had no opportunity to possess and destroy the original instrument while the testator was alive. *See Estate of Calf Looking*, 52 IBIA at 4-5. That inquiry is satisfied here.

*Fourth*, Appellant argues that ALJ Waits gave insufficient weight to Dr. Mohammed's expert opinion that Decedent himself "probably did not" execute the Will. Opening Br. at 7-8. We disagree. ALJ Waits fairly considered Dr. Mohammed's qualified second-hand opinion, but simply gave greater weight to the first-hand testimony from Jessie (who was present when Decedent dictated the terms of the Will to the scrivener) and from witnesses Saia and Vukich (who personally witnessed Decedent's

Case 3:25-cv-00103-HRH   Document 3   Filed 05/29/25   Page 12 of 14

EXHIBIT 1
Page 9 of 11

signature as well as each other's signature).[11] The Board declines Appellant's invitation to engage in our own handwriting analysis to override ALJ Waits's conclusion as the Board is not a handwriting expert. *See Estate of Cherrie Fletcher*, 67 IBIA 100, 110 n.12 (2020). Nor will the Board normally disturb a probate judge's witness credibility determination when the judge had an opportunity to hear the witnesses and observe their demeanor. *See Estate of Lorraine M. Miller*, 64 IBIA 273, 283 (2017). And even to the extent that the Board reviews witness credibility determinations *de novo* when, as is the case here, the witnesses testified through affidavit, *see Estate of Norman Steele (Steal)*, 31 IBIA 12, 13 (1997), Appellant has not persuaded us to discount the witnesses' attestations. Appellant's argument amounts to mere disagreement with the ALJ's well-supported finding and, as such, is insufficient to carry her burden on appeal. *See Estate of Heavyrunner*, 59 IBIA at 346.

*Fifth*, Appellant argues that ALJ Waits erred by finding that misconduct allegations against Vukich were irrelevant to her credibility as a will witness. Opening Br. at 8-9. ALJ Waits stated that, although a felony conviction could be grounds for finding a witness not credible, such a finding "is not mandatory." Order Denying Reopening at 4 n.10. As stated above, the Board reviews *de novo* the credibility of Vukich's affidavit testimony, *see Estate of Steele (Steal)*, 31 IBIA at 13, and we find that ALJ Waits's determination of Vukich's credibility withstands such review. We have previously held that a notary can serve as a second disinterested attesting witness, regardless of their intent to sign the will in the capacity of an attesting witness when notarizing the will, so long as the notary fulfilled the obligations of an attesting witness. *Estate of Wallace Emery Amiotte*, 67 IBIA 86, 86 (2020) (citing *Estate of Edward Kappaisruk Ramoth, Sr.*, 56 IBIA 271, 271 (2013)). The ALJ properly found that Vukich fulfilled those obligations here. Vukich's affidavit states that she was present at and observed the Will's execution, she evaluated and found satisfactory Decedent's capacity, and she signed the will. *See* Aff. of Vukich. This is corroborated by her signature on the Will's notarial certificate and by Saia's affidavit and Jessie's testimony. Appellant provides no evidence to contradict the other witnesses' testimony, and her generalized speculation about Vukich's credibility fails to prove error in ALJ Waits's determination.

*Finally*, Appellant argues that Decedent lacked testamentary capacity because he was prescribed several different pain medications around the time he executed the Will.

---

[11] For the first time on appeal, Appellant challenges the witness affidavits because they used essentially identical standard language drafted by PHD, and erroneously stated that the Will was executed in Bethel, Alaska, rather than Naknek. Opening Br. at 7. We similarly disregard this argument as beyond the Board's scope of review and otherwise unpersuasive.

EXHIBIT 1
Page 10 of 11

Opening Br. at 9-10. Appellant never developed the testamentary capacity argument beyond the rhetorical inquiry posed at the supplemental hearing but has instead indicated that she would offer additional expert testimony on the issue if the Board remanded the case for additional hearings. *See id.* at 10. A petitioner challenging a decedent's testamentary capacity bears the burden of proof by a preponderance of the evidence, *Estate of Glende*, 61 IBIA at 192, and is required to raise all their issues or arguments at the probate hearing, *see Estate of Drucilla (Trucilla) W. Pickard*, 50 IBIA 82, 92 (2009). Reopening is not an opportunity to start a new investigation. *See id.* Because Appellant has failed to properly raise her arguments to the probate judges and to the Board, she has failed to meet her burden to prove error in the determination.

## Conclusion

Therefore, pursuant to the authority delegated to the Board of Indian Appeals by the Secretary of the Interior, 43 C.F.R. § 4.1, the Board affirms the April 13, 2018, Order Denying Rehearing and Decision on Reopening.

I concur:

_____// original signed_____  
Kenneth A. Dalton  
Administrative Judge

_____//original signed_____  
James A. Maysonett  
Administrative Judge

Case 3:25-cv-00103-HRH   Document 3   Filed 05/29/25   Page 14 of 14

EXHIBIT 1
Page 11 of 11